UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN M. DANIELS,

    Plaintiff,

v.                                 Case No. 1:07-cv-528
                                    Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

        Plaintiff was born on March 24, 1969, attended two years of college and received additional training while in the military (AR 56, 116 ).[1] He alleges a disability onset date of April 2, 2003 (AR 56). Plaintiff had previous employment as a driver for a waste hauling company, a driver in the military, a sales representative and a driver/operator for an excavating company (AR 119). Plaintiff identified his disabling conditions as neuromuscular dysfunction of the right shoulder, neck injury, post traumatic stress disorder (PTSD), and Gulf War syndrome (AR 112). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 25, 2006 (AR 15-27). This

---

[1] Citations to the administrative record will be referenced as (AR "page #").

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (AR 17). Second, the ALJ found that plaintiff suffered from severe impairments of "bilateral shoulder impingement, s/p [status post] right acromioplasty; bilateral carpal tunnel syndrome; degenerative disc disease of the cervical spine; s/p stress fracture of both feet; major depressive disorder; dysthymic disorder; post-traumatic stress disorder; and somatoform disorder" (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks he could stand and/or walk for a total of 2 hours and sit for a total of 6 hours. He could engage in occasional pushing and/or pulling operation of hand controls; could do overhead reaching with the right arm no more than occasionally; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposures to vibrations, fumes, odors, dusts, gases, and poorly ventilated environments. He should not work at unprotected heights. He would be limited to simple routine tasks.

(AR 22). The ALJ found that plaintiff could not perform any of his past relevant work (AR 26).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of sedentary work (AR 26). Specifically, the ALJ found that plaintiff could perform the following work in the regional economy (the State of Michigan): inspector (1,000 jobs); surveillance system monitor (1,600 jobs); identification clerk (1,000 jobs); and product sorter (800 jobs) (AR 26).

Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 27).

## III. ANALYSIS

Plaintiff raises two general issues on appeal:

**The ALJ did not properly assess plaintiff's complaints of pain, limitations, mental impairments and credibility.**

**The ALJ failed to pose complete and accurate hypothetical questions to the vocational expert.**

Specifically, plaintiff contends: that the ALJ's decision in internally inconsistent; that the ALJ failed to address the disability rating assigned by the Department of Veterans Affairs (VA); and that the ALJ's hypothetical question posed to the vocational expert (VE) was defective for failing include limitations identified by state agency consultant Ronald C. Marshall, Ph.D. and failing to reference plaintiff's side effects from medications. For the reasons stated below, the court concludes that the ALJ's decision should be reversed and remanded because it is internally inconsistent and fails to assign weight to Dr. Marshall's opinions.

      **A.**      **The ALJ did not properly assess plaintiff's complaints of pain, limitations, mental impairments and credibility.**

      **1.**      **The ALJ's incorrect statement**

Plaintiff's claim of an internal inconsistency within the the ALJ's decision arises from a statement in the first sentence in a paragraph which reads as follows:

> <u>There is no documented history of a mental disorder.</u> The claimant does not require structured settings and has never been psychiatrically hospitalized. He testified that he takes Amitriptyline and Zoloft and that he attends counseling once a month with a Veterans' Administration counselor. The claimant engages in a wide range of daily activities, including taking care of his 2-year-old daughter. The undersigned finds, based upon the objective evidence, that the claimant has mild restriction in activities of daily living. When considering only the claimant's mental

>restrictions, he is able to function appropriately, effectively, independently, and on a sustained basis. He attends college and is working toward a secondary degree. The claimant has mild difficulties in maintaining social functioning. He interacts independently with others, and he cares for his 2-year-old daughter while his wife is attending school full time. He has not alleged any problems getting along with others. The claimant has moderate deficiencies in concentration, persistence, or pace resulting in failure to complete detailed tasks in a timely manner. He can generally sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of simple tasks. The claimant has no episodes of decompensation.

(AR 25) (emphasis added).

The court agrees that the ALJ's decision is internally inconsistent. On the one hand, the ALJ found that plaintiff suffers from severe mental impairments of major depressive disorder, dysthymic disorder, post-traumatic stress disorder and somatoform disorder (AR 17). Presumably, the ALJ based these findings on the medical evidence in the record. By definition, such severe impairments significantly limit plaintiff's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). On the other hand, the ALJ explicitly found that plaintiff has "no documented history of a mental disorder" (AR 25). The latter finding is inconsistent with the determination that plaintiff suffered from the four severe mental impairments. The question for the court is whether the ALJ's opinion is so internally inconsistent as to require a remand. As a general rule, "[n]o principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Here, the ALJ's statement that plaintiff had no documented history of a mental disorder is at odds with the ALJ's finding that plaintiff suffered from the severe impairments of a major depressive disorder, dysthymic disorder, post-traumatic stress disorder and somatoform disorder. If plaintiff had no history of a mental disorder, then there would be no basis for the ALJ's determination that plaintiff

suffered from the severe mental impairments. Under these circumstances, it is difficult for the court to follow the ALJ's reasoning. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning"). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's medical history with respect to his mental disorders.

### 2. VA rating

On October 30, 2002, the VA determined that plaintiff had an overall or combined disability rating of 40% related to his military service (AR 64-67). Then, on February 24, 2004, the VA found that plaintiff was permanently and totally disabled for purposes of a non-service connected pension (AR 88-89). The VA attributed this permanent disability on a number of factors:

> depressive disorder, not otherwise specified, residual injury and surgical repair of rotator cuff, right shoulder, residuals, surgical scar, right shoulder, residual stress fracture, bilateral feet, right side inguinal hernia, tinnitus, hearing loss, right ear, hearing loss, left ear, rash on chest, bilateral hand numbness, memory loss, sleep disturbances, respiratory problems, post traumatic stress disorder, "Gulf War Illness Syndrome," hypertension, chronic excessive sweating, skin rash, hair loss, and headaches which prevent you from working.

(AR 89).

The ALJ reviewed plaintiff's claims regarding his medical history while in the military, which culminated in a medical discharge from the army as "unfit for duty" with a 40% service-connected disability rating and a 100% nonservice-connected disability rating "which he is currently appealing [at the VA]" (AR 24). After reviewing the record, the ALJ correctly stated that he "is not bound by the findings of the Veterans' Administration with regard to a finding of disability" (AR 25). In this regard, the regulations provide as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

Although a VA disability rating is not binding on the ALJ, it is entitled to some weight. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ"); *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984) (noting that the record contained a VA insurance disability award marked "total disability").

The record reflects that the ALJ considered the VA disability rating and agreed with the findings as set forth in a confidential ad hoc summary of plaintiff's VA medical records, "except for the mention of chronic myofascial headache" (AR 24-25, 712-36). However, the ALJ ultimately concluded that the medical evidence did not demonstrate any debilitating complications from plaintiff's alleged impairments under the Social Security Act (AR 24-27). Accordingly, the ALJ did not err in his consideration of plaintiff's VA disability rating.

### B. The ALJ failed to pose complete and accurate hypothetical questions to the vocational expert.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the

8

claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ relied upon the VE's testimony given in response to the following hypothetical question:

> Let me ask you to consider a hypothetical individual the same age, background, and experience as the Claimant, had a residual functional capacity for simple routine tasks, lifting and carrying no more than 10 pounds, standing and walking with normal breaks for at least two hours in an eight-hour workday, sitting with normal breaks for about six hours in an eight-hour workday. Again limited upper extremity to no more than occasional pushing or pulling or operation of any hand controls. No climbing of ladders, ropes or scaffolds, occasional stooping, kneeling, and crouching, no crawling. Again limited to only occasional reaching with the right arm again avoiding exposure to vibration, fumes, odors, dust, gases, and poor ventilation, and unprotected heights. Assuming a hypothetical individual with that residual functional capacity, could you identify jobs in the regional economy that such an individual could perform, and if so, if you'd provide me similar information?

(AR 789-90). In response, the VE identified 4,400 jobs (AR 790). Ultimately, the ALJ found that plaintiff had less restrictive limitations than those set forth in the hypothetical question (e.g., he could occasionally lift 20 pounds) (AR 22, 25, 789-90). Nevertheless, the ALJ adopted the 4,400 jobs identified by the VE based upon the more restrictive limitations (AR 22, 26, 789-90).

Plaintiff contends that the ALJ's hypothetical question posed to the VE was defective because the question failed to include the mental limitations identified by state agency consultant Ronald C. Marshall, Ph.D., and failed to reference plaintiff's side effects from medications (oxycodone, morphine sulfate and Elavil).

9

### 1. Dr. Marshall's opinions

Dr. Marshall prepared both a mental RFC assessment and a Psychiatric Review Technique Form (PRTF) with respect to plaintiff (AR 251-69). The doctor's mental RFC assessment, prepared on form SSA-4734-F4-SUP, is described in the agency's Policy Operations Manual (POMS), § DI 24510.060, as including a worksheet with "summary conclusions" in Section I, with the actual RFC assessment in Section III. The summary conclusions in Section I relate to 20 areas of mental functioning. For each area of mental functioning, the agency physician evaluates the claimant as either "not significantly limited," "moderately limited," markedly limited," "no evidence of limitation in this category," or "no ratable based on available evidence" (AR 264). *See* POMS § DI 24510.060(B)(2)(c). "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS § DI 24510.060(B)(2)(a). [Emphasis in original.] The RFC assessment appears in a narrative format in Section III. POMS § DI 24510.060(B)(4).

> The instructions provide that Section III should be completed as follows:
>
> Record in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

(AR 253). *See, e.g., Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) ("worksheet observations" made by DDS physician that claimant was "moderately limited" in three areas of mental functioning, but "not significantly limited" in the other 17 areas of functioning translated into a mental RFC that the claimant "could perform repetitive, low stress work").

Here, Dr. Marshall did not explain his summary conclusions in a narrative form, but simply wrote "See PRTF" (AR 253). Dr. Marshall's reference is confusing, because the PRTF is an adjudicatory tool used to determine whether a claimant has a severe impairment or meets the requirements of a listed impairment. *See Furst v. Commissioner of Social Security*, No. 99-3581, 2000 WL 282909 at *2 (6th Cir. March 13, 2000) ("the ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the plaintiff] had a severe impairment and whether [the plaintiff's] condition was equivalent to any of the impairments that are listed in Appendix A to the regulations"). *See also Yoho v. Commissioner of Social Security*, No. 98-1684, 1998 WL 911719 at * 3 (4th Cir. Dec. 31, 1998) (ALJ is not obligated to transfer the findings on the PRTF verbatim to the hypothetical questions).

Nevertheless, pursuant to SSR 96-6p,[2] the ALJ is required to consider the opinions of state agency psychologists like Dr. Marshall and explain the weight given to these opinions:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

SSR 96-6p, 1996 WL 374180 at*2 (July 2, 1996).

Here, the ALJ's evaluation of plaintiff's mental RFC included Dr. Marshall's Section I summary conclusions that plaintiff was moderately limited: in the ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (AR 19, 251). The ALJ's decision listed Dr. Marshall's "rating of functional limitations" from the PRTF's, i.e., that plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation (AR 19, 266).

While the ALJ listed Dr. Marshall's opinions, his decision does not give any clue as to the weight he assigned to those opinions as required by SSR 96-6p. Once again, the court is faced with determining whether the ALJ's act was harmless error. *See Fisher*, 869 F.2d at 1057. Based on the facts of this case, the court concludes that the ALJ's failure to assign weight to Dr.

---

[2] SSR 96-6p is entitled, "Policy Interpretation ruling Titles II and XVI: Consideration of administrative findings of fact by state agency medical and psychological consultants and other program physicians and psychologists at the administrative law judge and appeals council levels of administrative review; medical equivalence."

Marshall's opinion was reversible error.  The ultimate issue before the court is whether the ALJ's hypothetical question adequately addressed plaintiff's mental impairments. Plaintiff contends that the ALJ should have included Dr. Marshall's conclusions that he is moderately limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  Plaintiff's Brief at 9. As previously discussed, it is unclear from the record whether Dr. Marshall would make these findings in a mental RFC assessment, how the ALJ interpreted Dr. Marshall's findings and what weight, if any, the ALJ assigned to the doctor's findings.  Thus, again, it is difficult for the court to trace the ALJ's reasoning.  *See Diaz*, 55 F.3d at 307.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the doctor's findings.

### 2. Medication side effects

Finally, plaintiff contends that the ALJ's hypothetical question failed to address the limitations caused by his medication.  Plaintiff testified that he took morphine two or three times a day, which caused drowsiness and concentration problems (AR 761).  For example, he falls asleep in class from his medication (AR 769, 771-72).  Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992).  *See*, *e.g.*, *Bentley v. Commissoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Secretary of Health & Human Servs.*, No. 92-1632, 1993 WL 291301 at *7 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy

13

he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant).

The ALJ considered plaintiff's report of significant medication side effects in December 2003 (AR 20). At that time, Hisanori Hasegawa, M.D., noted that plaintiff was "practically incapacitated due to chronic pain in the shoulder and neck and excessive drowsiness" (AR 290, 301-02). The doctor observed that plaintiff was previously on oxycodone "which practically knocked him out" (AR 290, 301-02). Plaintiff then took morphine sulfate which "was somewhat better but still excessively causing drowsiness [sic]" (AR 291, 301-02). However, the morphine sulfate, when combined with Elavil produced an interaction that "practically knocked him out" (AR 290-91, 301-02). The doctor remedied the situation by prescribing a low dose of morphine sulfate (AR 291, 301-02). Plaintiff provides no documentation of subsequent reports of alleged disabling medication side effects.

Furthermore, this condition appeared to have resolved in December 2003, approximately eight months after plaintiff's alleged onset date of disability. This record indicates that plaintiff's alleged disabling condition due to the side effects of oxycodone, morphine sulfate and Elavil did not last the requisite 12 months. *See* 20 C.F.R. § 404.1505. Accordingly, there was no basis for the ALJ to include medication side effects as an additional limitation in the hypothetical question posed to the VE.

**IV.     Recommendation**

For these reasons, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's medical history with respect to his mental disorders, re-evaluate Dr. Marshall's findings and, if necessary, re-evaluate plaintiff's ability to perform other work in the national economy.


Dated:  July 29, 2008                                       /s/ Hugh W. Brenneman, Jr.
                                                            HUGH W. BRENNEMAN, JR.
                                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).